## JANNEY v. ROBBINS.

(Filed May 16, 1906).

*Power of Attorney — Description of Land — Unregistered Deed—Color of Title—Adverse Possession—Trespass— Evidence.*

1. A power of attorney to sell and convey "all of our land in the State of North Carolina," is a description sufficiently definite to permit evidence *aliunde,* and would authorize a conveyance of all the land the person owned in the State at the time of the execution of the instrument.

2. The principle, that under our present registration law (Connor Act, Rev., 980,) an unregistered deed does not constitute color of title, does not extend to a claim by an adverse possession held continuously for the requisite time under deeds foreign to the true title or entirely independent of the title under which plaintiff makes his claim. *Austin v. Staten,* 126 N. C., 783, distinguished.

3. In an action to restrain defendant from cutting timber on certain land, where defendant denied plaintiff's title and claimed title in himself, an erroneous ruling excluding evidence tending to make his assertion good as to "part" of the land, entitles him to a new trial.

ACTION by Joseph W. Janney and others against Thomas C. Robbins, heard by *Judge O. H. Allen* and a jury, at the November Term, 1905, of the Superior Court of CALDWELL.

This was an action to restrain defendant from unlawfully cutting timber on the land of plaintiffs. Defendant, admitting the cutting of timber on certain land referred to in the complaint, denied plaintiffs' title to the land in controversy, averring that no wrongful cutting or other trespass had been committed by defendant. Issues submitted: 1. As to plaintiffs' ownership and right to immediate possession of the land sued for. 2. As to damage done by wrongfully cutting timber on said land.

Plaintiff first put in evidence a grant from the State to W. D. Sprague, being grant No. 918, dated 1875, for 640 acres, and offered evidence to show that the grant covered the land in controversy, and also a deed from W. D. Sprague, to Louisa W. Bond, dated 1876, covering the land in the above grant. To show title from this source in plaintiff, it became necessary for plaintiff to avail himself of a power of attorney from L. W. Bond to J. McDowell Tate, dated January 6, 1887, to sell said land, and a deed by said Tate pursuant to the power. The descriptive words of the power of attorney from L. W. Bond were to "negotiate to sell and convey, by proper deeds of conveyance, any and all of our real estate in the State of North Carolina." Defendant objected to the power of attorney because of the "vague and indefinite description of the land authorized to be conveyed." Objection overruled and defendant excepted. The papers in this line of title seem to have been all registered by January 7, 1890. Defendant then offered in evidence a grant from the State to J. L. Hawkins, dated December 3, 1891, a deed from J. L. Hawkins to A. M. Church and wife, dated in 1895, and a deed from Church and wife to defendant in 1903. The grant and deeds in this chain of title were all registered in the year 1903. Defendant offered evidence to show that these deeds covered the land in dispute, and further offered evidence to show that defendant and those under whom he claimed had been in the adverse continuous possession of the land for more than seven years prior to the institution of this suit under and by virtue of the grant to Hawkins and the deeds to Church and to the defendant—the deeds being necessary to give color of title for the requisite length of time.

Plaintiff objected to any evidence tending to show title by adverse possession by reason of any occupation of the property which antedated the registration of the deeds under which defendant claims. Objection sustained and defendant excepted. Plaintiff in reply then offered a deed from J. L.

Hawkins to W. L. Bryan, dated March 29, 1892, for 83 acres of land covered by the grant to Hawkins of date December 3, 1891, and a deed in fee from W. L. Bryan to plaintiff, dated May 7, 1892, for this same 83 acres of land bought of J. L. Hawkins—these deeds being registered respectively May 9, 1892, and May 12, 1892, and it was admitted that the 83 acres of land contained in these deeds was a part of the land trespassed upon. The plaintiff further offered evidence to show that under a correct and proper location of the deeds to and from A. M. Church, under which defendant claims, they would not cover any of the lands in controversy, and so defendant was entirely without color of title to any part of the land.

The court charged the jury that if they believed the testimony to answer the first issue 'yes,' and under further and proper instructions referred to the jury the question of damages. Verdict for plaintiffs and from the judgment thereon defendant appealed.

*Edmund Jones* for the plaintiffs.
*W. H. Bower* and *M. N. Harshaw* for the defendant.

HOKE, J., after stating the case: Defendant rests his claim to a new trial on two exceptions, first, that the description in the power of attorney is too vague and indefinite to authorize the conveyance of any land, and second, that the court ruled out the testimony offered with a view of showing title in defendant by adverse occupation.

On the first point, the authorities in this State are against the defendant's position. Conceding that a power of attorney to sell and convey real estate must contain on its face sufficient data to permit parol testimony to fit the description to the property, or it must refer for description to some deed or written paper which does contain such data, the language of this power of attorney, "all of our land in the State of

North Carolina," expresses a description sufficiently definite
to permit evidence *aliunde* and would authorize a conveyance
of all the land the person owned in the State at the time of
the execution of the instrument. *Carson v. Ray,* 52 N. C.,
609; *Farmer v. Batts,* 83 N. C., 387; *Perry v. Scott,* 109 N.
C,. 374.

On the second point raised by defendant's exceptions, we
are of opinion that there was error which entitles the defend-
ant to a new trial. In developing their case before the jury,
plaintiffs had put in evidence a grant from the State to W. D.
Sprague bearing date in 1875, and connected themselves with
this grant by a line of deeds registered on or before 1890. In
answer, the defendant had put in evidence a grant from one
J. L. Hawkins, bearing date December, 1891, and connected
himself with the grant by a line of deeds, the first in order
being a deed from Hawkins to A. M. Church in 1895. This
grant and these deeds were not registered till 1903.

Defendant then offered evidence tending to show con-
tinuous and adverse occupation of all the land in controversy
under these deeds for seven years next before action brought,
contending that such occupation under them would ma-
ture his title as against the Sprague title, the only one then
presented by plaintiff. The evidence was excluded and de-
fendant excepted. This ruling was predicated upon the idea
that under our present registration laws, an unregistered
deed can never be used as color of title and was no doubt
caused by the head note in *Austin v. Staten,* 126 N. C., 783,
in which it is declared to be the decision of the court, "that
an unregistered deed does not now constitute color of title."
An examination of this case, however, will disclose that the
head note is too broadly stated and goes entirely beyond the
scope and effect of the decision. The portion of our present
registration law (ordinarily spoken of as the "Connor Act"),
Revisal 1905, sec. 980, was not designed to interfere with
the doctrine of maturing title by adverse occupation and does

not do so except to the extent as limited and defined in the decision referred to.   There is a decided intimation to -this effect in *Collins v. Davis,* 132 N. C., at p. 111.   The law was enacted in order to establish and declare the rights of persons who claim under the same title, intended to be the true title, or the one presumably the true title, because both parties claim under a common grantor and undertook to do this by simply applying to deeds, and contracts concerning realty and leases of land of over three years' duration, the same provisions that had long prevailed as to mortgages, to-wit, that no such instruments should be valid to pass the property as against creditors or purchasers for value, but from the registration thereof.

In *Austin v. Stalen, supra,* the plaintiff claimed under a deed to himself from H. W. Staten and two others, dated March 31, 1896, registered the same day.   The defendant claimed under a deed from himself to the same parties dated December 31, 1887, registered May 31, 1897.   It will be noted that there both parties claimed from the same grantor, and the plaintiff's deed, though dated nine years or more later than the defendant's, had been registered more than a year prior to defendant's deed.   There were questions of fraud involved 'in the case, in no way material to the point now considered.   By the express provisions of the registration act; the plaintiff on the record and face of the papers, had the superior right because his deed had been first registered.   Defendant then took the position that though his deed, by virtue of the registration act was avoided as against plaintiff, yet the same was good as color of title, and proposed to maintain his title by showing occupation under his unregistered deed for seven years.   The court held that to allow this would be "in effect to destroy chapter 147, Acts 1885 (the Connor Act referred to), and this we cannot do."

Whatever might be the position of the court if this were an open question, we think it clear that the principle there an-

nounced must be confined to the facts of the case to which it was then applied, and does not extend to a claim by adverse possession held continuously for the requisite time under deeds foreign to the true title or entirely independent of the title under which plaintiff makes his claim. As to such deeds and claimants, our present registration law does not, and does not intend to, modify or interfere with the doctrine of maturing title by adverse occupation as heretofore expounded and applied by the decisions of this court.

At the time the evidence was offered, the plaintiff had introduced a line of deeds connecting himself with the Sprague grant covering the land in controversy. Defendant then offered a line of deeds taking their source in a grant to one J. L. Hawkins, also covering the land in controversy, and proposed to offer evidence to show continuous and adverse occupation under these deeds for seven years next before the action brought. The deeds not being registered, the court, acting no doubt on this syllabus, excluded the testimony, and in this there was error.

The plaintiff, however, contends that though this may have been erroneous, it afterwards became harmless, and the same was in fact cured by testimony subsequently offered by him showing that plaintiff had also the better title to the land in controversy under this very Hawkins grant, and if this be true, then the plaintiff and defendant do claim title from the same source, and the ruling would come directly within the correct principle of *Austin v. Staten, supra*. This would be a satisfactory and complete reply to defendant's position, but that the case states that plaintiff's line of deeds, which connect him with the Hawkins grant, cover but 83 acres and only a part of the land in controversy. The defense, then, of title by adverse occupation was open to defendant as to all the land in dispute outside of the 83 acres, and as to such land the deeds of defendant were good as color of title without registration, and the evidence should have been received

on that question. This is not an action of ejectment simply, in which, when a defendant fails to disclaim but enters a general denial, a recovery of any portion of the land was sometimes held to warrant a general verdict in plaintiff's favor. Here, the defendant in his answer has set out and described by metes and bounds the land which he claims, and on which he admits he has entered and cut timber, claiming the right to do so. He offers evidence tending to make his assertion good as to part of the land and this is denied him by an adverse and erroneous ruling of the court. By reason of the verdict rendered, pursuant to such ruling, the plaintiff has obtained an injunction against the defendant, restraining him from entering or cutting timber on any portion of the land in controversy, and this, we think, is substantial error and entitles the defendant to a new trial.

Apart from this, the technical strictness of the old law as to the effect of a failure to disclaim on the part of the defendant has been very much modified, if not altogether done away with, except, perhaps, on the question of costs as to actions for land under The Code. This change and the effect of certain kinds of pleading, as affecting the rights of parties in controversies of this character, are well set forth by *Chief Justice Smith* in *Cowles v. Ferguson,* 90 N. C., 308, as follows: "We do not attach the same significance to the form of the answer, however interpreted, as the court has in its bearing upon the rights of the defendant. Assuming that the defendant claims title and possession as following it to the whole tract, and upon the proof is unable to make good his claim, shall he for this reason be denied the right to retain the part to which he does show title and possession? Conceding, as we must, in reviewing the ruling of the court, that by a long adverse possession the defendant has acquired title to the part so occupied, and it is the same if his evidence would warrant the jury in so finding, the plaintiffs will not fail in their action, because they do not show themselves entitled to

the whole area claimed in the complaint. They will recover so much as they show title to, though less than the whole; and this, because the claim to all is a claim to all the parts which make the whole, the greater including the less.

"The same principle applies to the defense with equal if not greater force. The defendant cannot be denied the right to retain so much of the land in dispute as he proves himself to be the owner of, because his assertion of title and possession to all could not be sustained. He is not to be deprived of what is his own because he claimed more than belongs to him. Indeed, his case is stronger, for he retains all to which the plaintiffs cannot show title in themselves, because, though the defendant's possession may be wrongful as to the true owners, it is not wrongful as to the plaintiffs, whose recovery is confined to what is proved to belong to them.

"The true and governing rule applicable to conflicting claims set up to the same land by the parties to the action is, and must be, that they recover and retain respectively what each shows himself entitled to upon the evidence, unaffected by the fact that both set up claims to the whole, with this qualification, that so much as does not belong to either remains undisturbed with the one in possession. This rule, just in itself, seems to have been subordinated to some technical principle of pleading which refused to the defendant his right to hold what was his own, because he did not disclaim as to the residue of the tract; in other words, he claimed too much and, therefore, cannot keep what is his own.

"The court was perhaps misled by what is said by *Pearson, C. J.,* in *McKay v. Glover,* 7 Jones, 41 (52 N. C.), that 'if a plaintiff succeeds in showing title to any part of the land contained in the demise of which the defendant is in possession, the jury may return a general verdict; although, as to the other part, the plaintiff failed to show title.' But he adds: 'The court may in its discretion direct the jury to find

specially so as to run the line between the plaintiff and the defendant; but the usual course is not to complicate the inquiry and to allow a general verdict if the plaintiff makes out his case as to any part of the land held by the defendant, and the plaintiff then takes out a writ of possession at his peril.' This is said about the old form of the action of ejectment, whose object is to get possession for the lessor of the plaintiff, and the determination affects no right of property in either. Its results are unlike the result of the action under The Code of Civil Procedure, which may, as in other actions, conclude and settle the title when that is put in issue, and such is the effect of the judgment rendered in this case, if allowed to stand."

We have only referred in the opinion to the case of *Austin v. Staten, supra,* because that is the case in which the broad doctrine that an unregistered deed can never be color of title is supposed to have had its origin and support, and we desired to correct the erroneous impression which the decision may have made. We are not inadvertent to the cases of *Lindsay v. Beaman,* 128 N. C., 189, and *Utley v. Railroad,* 119 N. C., 720. So far as it affects the question here considered *Lindsay v. Beaman* only passed on the record of a partition proceeding as color of title. The effect of an unregistered deed as color was in no way involved in the decision and the expression of the judge as to this was entirely *obiter.* The decision in *Utley v. Railroad, supra,* is in accord with our present ruling except as modified by *Austin v. Staten,* and in the restricted interpretation we have here given this last case. It might well be suggested that in *Austin v. Staten,* the unregistered deed relied on, as color, could not avail for any such purpose, because, until a second deed was executed and registered, the first passed the title, and a deed never operates as color which conveys the real title. Where a second deed is registered, however, the effect of a prior unregistered instrument as color will always be presented, and we have considered it proper to approve the de-

cision in *Austin v. Staten* to the extent as indicated and heretofore expressed. There is error and a new trial will be awarded.

New Trial.

WALKER, J., concurs in result.