## P. H. MOORE v. MARY JOHNSON ET AL.

(Filed 13 May, 1913.)

1. **Deeds and Conveyances—Common Source—Unregistered Deeds —Color of Title.**

    Where the parties to an action to recover land claim from a common source, an unregistered deed of one of them is not color of title as against the other, a grantee for value, under a registered deed; it only becomes so from the time of its registration, and ripens the title after seven years adverse possession therefrom.

2. **Deeds and Conveyances—Common Source of Title.**

    A common source of title is one appearing somewhere in the chain of paper title relied on by each party in an action to recover lands, and is not affected by the fact that theretofore it is claimed from different sources.

3. **Deeds and Conveyances—Coverture—Joinder of Husband—Privy Examination.**

    A deed made by a married woman, without taking her privy examination and the joinder of her husband, is void.

**4. Deeds and Conveyances—Registration—Notice—Bona Fide Purchasers—Interpretation of Statutes.**

Where in an action to recover lands it appears that both parties are purchasers in good faith for value, one claiming by adverse possession under an unregistered deed as color, and the other under a prior registered deed, and both under a common source, no notice, however full and formal, will supply the place of registration, and the party claiming under the registered deed has the better title.

APPEAL by plaintiff from *Lyon, J.,* at September Term, 1912, of WILKES.

This is an action for the recovery of 23 acres of land. The defendants are Mary Johnson and her children, Thomas Johnson and Walter Johnson. If Mary Johnson can successfully defend the action, plaintiff cannot recover against her codefendants, her children, as they are in possession under her.

Plaintiff claimed title as follows:

1. Grant from the State to Richard Parker for 80 acres of land, dated 29 July, 1843.

2. Deed from Richard Parker to William Tedder, 1 June, 1830, and from William Tedder to James Calloway, 16 April, 1844; the will of James Calloway, 30 December, 1878, appointing George H. Brown his executor, with power to sell his lands, in his discretion, to pay his debts, and make title to the same, and deed of George H. Brown, executor of James Calloway, to Wilson Moore, 8 April, 1880, registered 16 March, 1909, and deed from Wilson Moore to plaintiff, P. H. Moore, 12 January, 1901, registered 2 December, 1907.

There was some evidence that all these deeds, and the will, cover the land in dispute, and evidence to the contrary. There was also evidence of possession by plaintiff of the land for about twenty-four years before this suit was brought.

Defendant denied the plaintiff's title and asserted title in herself, as follows:

1. Grant of the State to James Fletcher, dated 17 April, 1799.

2. Deed from James Calloway to Jesse Anderson, dated 19 October, 1863, and registered 20 February, 1906.

3. Death of Jesse Anderson, leaving four children, (1) James Anderson, to whom Calloway conveyed; (2) Mary Anderson, who married John Johnson in 1880, he being still alive; (3) John Anderson, who died twenty-five years ago intestate and without having married, and (4) Reuben Anderson, who conveyed his one-third interest in his father's land to plaintiff, P. H. Moore, 14 March, 1891.

4. Deed from P. H. Moore and wife to James Anderson, dated 6 October, 1900, and registered 27 September, 1912.

5. James Anderson and his sister, Mrs. Mary Johnson, the defendant, partitioned their lands and executed deeds accordingly, James Anderson conveying to Mary Johnson her one-half share in severalty by deed dated 6 January, 1907, and registered 6 March, 1909.

6. There was some evidence that the grant and deeds in defendants' chain of title covered the *locus in quo.*

The court, in its charge, made the case turn, first, upon the question whether the defendants' deeds covered the land in dispute, instructing the jury, if they did, to answer the issue as to ownership in favor of defendants, and still to answer in that way if they found that plaintiff's deeds did not cover the land, the burden being upon plaintiff to show that fact; but he further instructed them to answer the issue for the plaintiff if they found that his deeds covered the land and the defendants' did not. The court then proceeded to instruct the jury as follows: "Both parties claim under James Calloway. They admit that at one time James Calloway owned the 150-acre tract and the 80-acre tract, and that he made a deed to the defendants or to those under whom the defendants claim, and that his executor made a deed to Wilson Moore, under whom the plaintiff claims. Now, the deed of James Calloway to Jesse Anderson, under whom the defendant Mary Johnson claims, was made in 1863, and was registered in 1906. The deed from George Brown to Wilson Moore, under whom the plaintiff claims, was made in 1880 and registered 16 March, 1909, about three years after the deed to Jesse Anderson was registered. So there is no question in this case of adverse possession. The plaintiff, P. H. Moore, has not introduced any

deed under which he has held possession of the land for seven years. While his deed is seven years old, it only counts as color of title against Mary Johnson from the date of its regis-tration, and that was in 1909, and not seven years before the suit was brought (which was 3 March, 1908). In passing upon the issues in this case, you will not consider the quitclaim deed of James Anderson either as against him or any one else. The whole question turns on whether or not the James Fletcher grant and deeds to the defendants from 'James Calloway, on down, cover the land in dispute. If they do, the plaintiff is not entitled to recover; but if the defendants' deeds do not cover the land in dispute, and if the deed from James Calloway to Jesse Anderson did not cover the land in dispute, the plaintiff would be entitled to recover, provided you find from the evi-dence, and by the greater weight of the evidence, that the Richard Parker grant and the deeds introduced by the plain-tiff do cover the land in dispute."

The jury returned a verdict for the defendant, and plaintiff appealed, having assigned as error each instruction of the court, as above stated, and also the refusal of the court to give this instruction, requested by him in apt time: "If the jury find from the evidence that the plaintiff and those under whom he claims have been in the open, peaceable, and notorious posses-sion of the land in controversy, holding the same adversely to the defendants for seven years prior to the commencement of this action under color of title, such possession would ripen title in plaintiff, and the jury should answer the first issue 'Yes.' "

*W. W. Barber for plaintiff.*

*H. A. Cranor and Hackett & Gilreath for defendant.*

WALKER, J., after stating the case: We do not see why the charge of the court was not correct under the rule, now well established by the decisions of this Court, that where the par-ties to the action claim from a common source of title, in this case James Calloway, the true title and right to recover de-pends, not upon color of title and adverse possession under it, but must be determined by reference to the date of registration

of the deeds of the respective parties. It was held in *Austin v. Staten,* 126 N. C., 783, that in such a case "an unregistered deed does not constitute color of title," since the passage of the Acts of 1885, ch. 147 (Revisal of 1905, sec. 980). This view of the law was adopted in *Janney v. Robbins,* 141 N. C., 400, the Court following the decisions in *Austin v. Staten, supra; Lindsay v. Beaman,* 128 N. C., 189; *Collins v. Davis,* 132 N. C., 106, and *Laton v. Crowell,* 136 N. C., 380. *Justice Hoke* in *Janney v. Robbins,* referring to what had been decided in *Austin v. Staten,* and its legal effect upon titles as a construction of the Acts of 1885, ch. 147, Revisal, sec. 980, said: "The plaintiff, in *Austin v. Staten,* claimed under a deed to himself from H. W. Staten and two others, dated 31 March, 1896, registered the same day. The defendant claimed under a deed to himself from the same parties, dated 31 December, 1887, registered 31 May, 1897. It will be noted that there both parties claimed from the same grantor, and the plaintiff's deed, though dated nine years or more later than the defendant's, had been registered more than a year prior to the defendant's deed. There were questions of fraud involved in the case, in no way material to the point now considered. By the express provisions of the registration act, the plaintiff on the record and face of the papers had the superior right, because his deed had been first registered. Defendant then took the position that though his deed, by virtue of the registration act, was avoided as against plaintiff, yet the same was good as color of title, and proposed to maintain his title by showing occupation under his unregistered deed for seven years. The court held that to allow this would be in effect to destroy chapter 147, Laws 1885, and this we cannot do." It will be observed that the facts thus recited as those in *Austin v. Staten* are substantially the same as those we have before us in this record.

The Court, both in *Janney v. Robbins* and *Collins v. Davis,* expresses a very serious doubt as to whether the Legislature intended to effect such a radical change, by the Act of 1885, in the law of color of title, as formerly declared, but this doubt was finally settled in *Collins v. Davis, supra,* by the use of this language: "We therefore hold that where one makes a deed

for land for a valuable consideration, and the grantee fails to register it, but enters into possession thereunder and remains thereon for more than seven years, such deed does not constitute color of title and bar the entry of a grantee in a subsequent deed for a valuable consideration who has duly registered his deed.   Except in cases coming within this rule, the rights acquired by adverse possession for seven years under color of title are not disturbed or affected by the act of 1885. To this extent we affirm the law as laid down in *Austin v. Staten, supra.*   It is in harmony with the legislative purpose and policy incorporated into our laws by the act of 1885.   The act intended to make secure and give notice of the condition of titles, and thereby prevent the evils existing under the law prior thereto, and must be construed with reference to this evil and in furtherance of the remedy," which was afterwards approved in *Janney v. Robbins, supra.*   The Court did say in both of these cases that the doctrine of color of title is not modified except to the extent stated, that is, where the parties claim from the same source of title and in cases coming strictly within the principle, and that when they do not so claim, but derive their alleged right from independent sources, the doctrine of color of title, with respect to an unregistered deed, still exists.   The plaintiff argues, though, in his brief, that the parties in this case do not claim from a common source, and he seems to think that because the plaintiff introduced one grant from the State to Richard Parker for the 80 acres, and defendant a grant to James Fletcher for the 150 acres, both of which covered the disputed land, they claimed by independent titles.   But not so, for the true title afterwards was acquired, or is presumed to have been acquired, by James Calloway, who thereby became, if we may so speak by analogy to a descent, the propositus of both parties, as they both introduced mesne conveyances to themselves from him and those under whom they claimed.   The grants are of no importance, as there was no evidence of any better title than that presumed to have been held by Calloway, with which plaintiff connected himself.

It was upon the idea that, by the introduction of the grants it was shown that the parties claimed under different titles,

and not from a common source, that plaintiff requested the instruction which was refused, and properly so, and his exceptions to the charge are all based upon the same erroneous view of the law. This is not a question of the lappage of two grants, though they may actually interfere with or overlap each other. The true title, so far as appears, came finally into James Calloway, and we start with him and are not required to consider the Parker or Fletcher grants. It may be added, that neither of the parties is connected by mesne conveyances or otherwise with the Fletcher grant. The rulings of the court were all correct, unless it be that the plaintiff's deed was color of title, and we have held that it was not.

The case was tried upon the theory that the pivotal question involved was whether the plaintiff's deed, not having been registered until the year 1909, was color of title, the defendant's having been registered before that year and before the bringing of this suit, and upon this theory we decide it. There is no merit in the other question. A quitclaim deed from James Anderson to Wilson Moore, who conveyed to the plaintiff, can play no part in the case, as it appears that, at the time it was made Anderson had parted with his title, and the joinder in the deed of Mary Johnson, alone or without her husband, was void as to her, she being a married woman, and the joinder of her husband, with acknowledgment of both and her privy examination, being necessary to give efficacy to the deed. But plaintiff's counsel admits that this, the second, exception becomes immaterial and the ruling unprejudicial in view of our holding as to the other assignment of error. The act of 1885 was intended, of course, to protect only *bona fide* purchasers for value and without notice, but there is no question of that sort in this case. No notice, however full and formal, will supply the place of registration. *Robinson v. Willoughby,* 70 N. C., 358; *Blevins v. Barker,* 75 N. C., 436; *Quinnerly v. Quinnerly,* 114 N. C., 145, and cases cited. Both parties appear to have acted in good faith in buying the land, and to have given value therefor, and the plaintiff loses unfortunately by his neglect to have his deed duly registered. There was no request for instructions, except as indicated. The only prayer

raises the same question practically as the exception to the charge. We have considered the questions discussed in the brief of appellant, covered by his assignments of error, and have discovered no error in the trial.

No error.