CLENDENIN v. CLENDENIN.

---

J. C. CLENDENIN ET AL. v. W. S. CLENDENIN.

(Filed 7 June, 1921.)

**1. Deeds and Conveyances—Husband and Wife—Probate—Title.**

A deed by a married woman to convey her land will pass no interest therein when her privy examination has not been taken according to law.

**2. Limitation of Actions—Adverse Possession—Ouster—Notice.**

The use and occupation of land is not alone sufficient to confer title on the occupant, the presumption being that the title is in the true owner; and the statute will only ripen the title of the occupant when it has been adverse for the statutory period; that is, open, continuous, notorious, and hostile to the true owner, and evidenced by such unequivocal acts as will put the true owner on notice of the claim.

**3. Same—Relationship of Parties, Parent and Child.**

The husband moved with his wife upon the lands of her mother, and continued thereon with her and their children to the death of his mother-in-law and of his wife, who inherited the lands from her, and cultivated them without giving clear, definite, or unequivocal notice of his intention

30—181

to exert exclusive ownership: *Held*, the character of the husband's possession was affected by the relationship of the parties, and this possession was subordinate to the superior title, inherited by his children from their mother, and could not ripen a perfect title in him.

**4. Limitation of Actions—Adverse Possession—Color of Title.**

The question of color of title to lands does not arise when the character of the possession of the claimant is not sufficient to ripen a perfect title in him.

**5. Appeal and Error—Judgments—Modification and Dismissal.**

Where a judgment has been properly entered against a party, except that it allows a greater amount for damages than found by the verdict, it may be modified in this respect on appeal and affirmed.

CLARK, C. J., dissenting.

APPEAL by defendant from *Lane, J.,* at the October Term, 1920, of IREDELL.

This is an action, commenced 1 May, 1919, to recover land, which formerly belonged to Jane E. Click, a married woman, who died intestate in October, 1901, leaving as her only heirs one daughter, Annie Fleming, and the plaintiffs, who are the children of a deceased daughter, Belle V., and of the defendant, W. S. Clendenin.

The interest of Annie Fleming has been conveyed to the plaintiffs.

The husband of Jane E. Click died in 1902, and Belle V. in 1893.

The defendant married in 1885, and the children, who are plaintiffs, were born, respectively, 18 January, 1887; 18 or 21 December, 1889; 18 December, 1891.

The defendant was permitted to introduce in evidence a paper-writing of date 10 February, 1896, purporting to be executed on 10 February, 1896, by Jane E. Click and her husband, and to convey said land to the plaintiffs, with the following reservation therein in behalf of the defendant: "It is further hereby stipulated that the said W. S. Clendenin shall hold a life estate in the above described tract of land."

The private examination of Jane E. Click was not taken, and there is no probate of the writing or other proof of its execution except that on 11 February, 1919, it purports to have been proved on the oath and examination of two witnesses to the handwriting of the subscribing witness, and was put on the record on 12 February, 1919, and there is no evidence that the plaintiffs knew of its existence prior to that time.

The defendant relied on said paper as color of title for a life estate, and that his color had ripened into a good title by seven years adverse possession. He also contended that if the paper was not color he was the owner of a life estate by twenty years adverse possession.

His Honor instructed the jury to answer the first issue "Yes," if they believed the evidence, and the defendant excepted.

The jury returned the following verdict:

"1. Are the plaintiffs the owners and entitled to the possession of the lands described in the complaint? Answer: 'Yes.'

"2. What amount are the plaintiffs entitled to recover of the defendant as rent? Answer: '$100.' "

There was a judgment in favor of the plaintiffs, and the defendant appealed.

*Dorman Thompson for plaintiffs.*
*Long & Jurney and W. D. Turner for defendant.*

ALLEN, J. The paper-writing introduced in evidence by the defendant is void, and did not have the effect of passing any interest in the land to the plaintiffs or the defendant, because the land purporting to be conveyed belonged to a married woman, and her privy examination was not taken (*Council v. Pridgen,* 153 N. C., 444), and with this paper out of the way as evidence of title, the plaintiffs are the owners in fee of the land as the heirs of Jane E. Click, the former owner, and as grantee of Annie Fleming, another heir, unless the defendant has shown title by adverse possession.

There is a marked distinction between the possession and user of land, which may be by permission, or without claim of right, or without purpose to acquire title, and an adverse possession, which, is continued for a sufficient length of time, will confer title.

There is not only no presumption that the possession is adverse to the true owner (*Shermer v. Dobbins,* 176 N. C., 549), but, on the contrary, every possession is deemed to be under and in subordination to the true title, unless such possession is shown to be adverse (*Bland v. Beasley,* 145 N. C., 169), by which is meant that it is open, continuous, notorious, hostile to the true owner, and evidenced by such unequivocal acts as will put the true owner on notice of the claim.

"It consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser. It must be as decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner." *Locklear v. Savage,* 159 N. C., 237.

The relationship of the parties also affects the character of the possession, and it was held in *Kornegay v. Price,* 178 N. C., 441, that the

husband could not, while living with his wife on the land, acquire title against her by adverse possession, and the same was held as to the wife in *Hancock v. Davis,* 179 N. C., 283.

It is also stated in 1 R. C. L., 759, that, "As a general rule, an adverse possession cannot be predicated on the possession of the parent as against a child, or on the possession of a child as against its parent. Thus, where a father became insane, and one of his sons took the management of his farm during the rest of his father's lifetime, and remained in possession of it during the statutory period, it was held that these facts did not warrant the presumption of a conveyance to the son by the father, or of a release to him by the other heirs subsequent to their father's death. So, it has been held that the possession of land acquired by a father, under a conveyance to his infant child, and continued long after such child's minority, did not ripen into a title by adverse possession. In order that a possession of the character under consideration may become adverse, the owner must have had some clear, definite, and unequivocal notice of the adverse claimant's intention to assert an exclusive ownership in himself."

Applying these principles, there is no sufficient evidence of such adverse possession as would perfect the title of the defendant as against the plaintiffs, because there was nothing in the use of the land inconsistent with relationship ordinarily existing between parent and child, and nothing to put the plaintiffs on notice that the defendant was claiming in his own right.

The defendant married the mother of the plaintiff in 1885, and moved on the land with the "old people," who were J. D. Click and wife, Jane E. Click. He cultivated the land, and continued to use it during the lifetime of the grandparents of the plaintiff, who died in 1901 and 1902, respectively. He still remained upon the land after their death up to the present time, his children being with him, and there is nothing in the record indicating in the slightest degree that the plaintiffs knew or had any reason to know that he claimed the life estate until 1919, when the paper-writing referred to was put on the record. He had possession and used the land, but it was in conjunction with the plaintiffs, his children, who were the true owners, and therefore his possession was in subordination to their title until made hostile by some unequivocal act, and there is no evidence of such prior to 1919, and there was therefore no error in the instruction to the jury.

In this view of the case it is not necessary to determine whether the paper-writing can be used as color of title or the effect of the reservation as an adverse possession of either seven years or twenty years has not been shown.

We therefore find no error in the trial of the cause, but the judgment must be modified, as it permits a recovery of $400 for rents, whereas the jury answered the second issue $100.

Modified and affirmed.

CLARK, C. J., dissenting: The court directed the jury: "If you believe the evidence you will answer the first issue 'Yes' "—that is, the plaintiffs are entitled to recover.

This is an action by the children against the father for recovery of a tract of land. There is no substantial conflict in the evidence which is as follows: It is agreed that the land belonged to Jane E. Click, the grandmother of plaintiffs and mother-in-law of the defendant in this action. Her husband was J. D. Click. They had five children, only three of whom lived to maturity, and one of them died before his mother, leaving no children and no will. Jane E. Click died in October, 1901, leaving no will, and leaving as her heirs a daughter, Mrs. Annie E. Fleming, and the plaintiffs, who are the children of Belle V. Click, who married W. S. Clendenin, the defendant, in 1885. The plaintiffs are their children: Grace Phifer, born 18 January, 1887; J. C. Clendenin, born 18 December, 1889; and William C. Clendenin, born 18 December, 1891. Their mother died in May, 1893. The plaintiffs offered a quit-claim deed from Annie E. Fleming and her husband to them dated and registered in 1919.

The evidence of the defendant, which is not contradicted, is that he was married in 1885; that he lived with his wife's mother and father a year and a half; that his oldest child, Mrs. Phifer, was born there; that he then moved over to this part of the farm which he has since occupied, and. the rest of his children were born on the farm in controversy; that from the time he occupied this piece of land, which is 110 acres of land, he has paid taxes on it and received the rents and profits; that the lines are known and visible, and there is no dispute about them; that he has been in continuous possession since that time. He put in evidence a conveyance from Jane E. Click and J. D. Click, dated 10 February, 1896, whereby they conveyed this tract of land of 110 acres (which is a different part of the land from that on which the grantors lived and died), which recites that it was conveyed to "Grace C., John A. Clendenin (since dead), Jesse C. Clendenin, and William C. Clendenin, minor heirs of W. S. Clendenin"; and after describing the land and reciting the consideration of love and affection and $1, and giving the description of the land by metes and bounds, says: "It is further hereby *stipulated* that the said W. S. Clendenin shall hold a life estate in the above described tract of land." This was not a reservation, but an essential part of the conveyance.

It is further in evidence that this deed was attested by W. W. Click, the son of the grantors, and signed by Jane E. Click and her husband, J. D. Click, and was proven and registered 11 February, 1919. Jane E. Click died in October, 1901, and her husband, J. D. Click, in October, 1902. The evidence of the defendant is that he has lived on the land continuously since he went upon it in 1886; that he put up the buildings thereon, and that he received the above deed 10 February, 1896, and has lived there continuously ever since under known and visible metes and bounds in undisputed possession, claiming a life estate, and has received all the rents and profits, and paid all the taxes. The testimony for the plaintiffs corroborates this unbroken possession.

Mrs. Fleming, witness for plaintiffs, testified that her mother and father had quite a body of land which they divided out among their three children by deed during their lifetime. The defendant testified without contradiction that he went upon the land in 1886 and erected the buildings thereon, and received this deed in February, 1896, conveying the land to his children as "his minor heirs," and stipulating a life estate to himself.

It would be a reasonable inference for the jury that he went there and erected the buildings upon a promise that that part of the land should be conveyed to his wife, and he put up the buildings thereon upon faith of such agreement. Upon the division in 1896 of the lands by deed among her three children then living, Mrs. Click conveyed this tract to defendant's "minor heirs," subject to his life estate in lieu of the tenancy by curtesy which he would have had if his wife was then living.

The ground of plaintiffs' action is that the privy examination of Mrs. Jane E. Click not being taken to the aforesaid conveyance, it was a nullity. Upon the testimony, which is practically without conflict, only three contentions can possibly arise.

1. The conveyance of 10 February, 1896, without the privy examination, was color of title. This is nowhere better stated than by *Mr. Justice Allen* in *King v. MacRackan,* 168 N. C., 623, 624, who thus sums up the law: "The deed of a married woman without privy examination, if otherwise sufficient, is color of title. *Norwood v. Totten,* 166 N. C., 648 (and numerous cases there cited), but the rule prevails as to all deeds that if they are placed upon the registry upon a defective probate they will be dealt with and treated as if unregistered (citing authorities). We must therefore treat the deeds upon which the plaintiff relies as color of title as unregistered. Prior to the Connor act of 1885, an unregistered deed was in all cases color of title if sufficient in form (*Hunter v. Kelly,* 92 N. C., 285). After the passage of that act, it was held in *Austin v. Staton,* 126 N. C., 783, that an unregistered deed was not color of title. But the question was again considered in *Collins v. Davis,* 132

N. C., 106, and the ruling in *Austin v. Staton, supra,* was modified so that it only applied in favor of the holder of a subsequent deed upon a valuable consideration, and this Court has since consistently adhered to the latter decision. *Janney v. Robbins,* 141 N. C., 400; *Burwell v. Chapman,* 159 N. C., 211; *Gore v. McPherson,* 161 N. C., 644."

It has also been held that a deed to which the privy examination of a married woman is not taken is color of title. *Janney v. Robbins, supra; Smith v. Allen,* 112 N. C., 226; *Perry v. Perry,* 99 N. C., 273. An unregistered deed is color of title. *Janney v. Robbins, supra; Utley v. R. R.,* 119 N. C., 720, and other cases. This is the rule elsewhere. 1 Cyc., 1088.

The conveyance of 10 January, 1896, was therefore color of title, and the defendant being then in possession and having held ever since then adversely until this action was begun, 1 May, 1919, has acquired an absolute title notwithstanding the failure to take the privy examination of Mrs. Click.

"It is not necessary that the entry shall have been made under color of title, nor when color of title is obtained subsequent to the entry, that any declaration shall be made or any act of publicity shown to indicate the holding thereof is under color of title, the presumption of law being that a party in possession holds under such title as he has and from the time it was acquired." *Hawkins v. Cedar Works,* 122 N. C., 87.

The terms of the conveyance under which the defendant held was to his "minor heirs" (naming them), with the provision: "It is further hereby stipulated that the said W. S. Clendenin shall hold a life estate in the above described tract of land." This is a conveyance (and not a reservation) to the defendant for life, and to his minor heirs thereafter, by all reasonable construction, for the deed must be construed by its four corners according to "its true intent disregarding technical objections." *Brown, J.,* in *Triplett v. Williams,* 149 N. C., 394, often cited since. See Anno. Ed.

Under the authorities above cited, notwithstanding the privy examination of the *feme* grantor was not taken, and the deed itself was not registered until 1919, this was color of title. The defendant Clendenin held adversely to his grantors, being in possession and continued to hold possession up to the death of J. D. Click in October, 1902, more than 6½ years. At the death of the grantors the statute continued to run against the heirs of the grantors. *Pearce v. House,* 4 N. C., 722; *Seawell v. Bunch,* 51 N. C., 195, and cases cited; *Chancey v. Powell,* 103 N. C., 159; *Frederick v. Williams, ib.,* 189; *Dobbin v. Dobbin,* 141 N. C., 219; *Holmes v. Carr,* 172 N. C., 215; and the statute continued to run as against the plaintiffs, who claim as heirs. This was clearly so as to Mrs. Fleming, who was of full age, and on the above authorities it was

also good against the plaintiffs as to their half interest as heirs at law, for after the statute had begun to run between the grantors and the defendant holding adversely under their deed, the disability accruing subsequently by reason of the minority of the plaintiffs could not stop the running of the statute.

But even if the casting of the inheritance, as to one-half interest of the plaintiffs, who were then minors, could have had the effect to suspend the running of the statute, even then they would have had only three years in which to have brought this action after the disability was removed by the coming of age of each—the youngest of the plaintiffs became of age in December, 1912. C. S., 407.

If the conveyance without the privy examination of the *feme* grantor was not color of title as to the defendant, it certainly was not color of title to the plaintiffs, whose interest it was "stipulated" was not to accrue until after the defendant's life estate, and who, besides, were not in possession.

2. If the defendant's title under color of possession and 7 years possession thereof under such color did not bar this action, then certainly he was in possession from 10 February, 1896, holding, according to the evidence on both sides, sole and absolute possession, claiming adversely to Jane and J. D. Click and all the world, under known and visible metes and bounds, for 20 years, and his title ripened under that statute on 10 February, 1916. And even if the running of such title was suspended at death of defendant's grantors by the minority of the plaintiffs, they were entitled only to three years after the disability was removed to bring this action. C. S., 407.

3. Even if, contrary to the decisions, the defendant was not protected by the 7 years possession under color of title, nor by the 20 years possession adversely under known and visible metes and bounds, certainly he was protected by the adverse possession for 7 years after the oldest of the plaintiffs became of age in January, 1908, the next in December, 1910. This action was begun on 1 May, 1919, and even in that aspect of the case the plaintiffs were barred except as to the youngest, who would be entitled to one-sixth interest. The one-half interest claimed under the quitclaim of Mrs. Fleming was barred because she was of age long before any of the plaintiffs.

There is the further consideration that the plaintiffs, and those under whom they claim, have not had seizin within 20 years before this action was brought. C. S., 429.

The defendant, when this action was brought, 1 May, 1919, had been in possession of this land for 33 years. He had been in exclusive and adverse possession after the deed of February, 1896, more than 23 years. He had 7 years possession under color of title adverse to the grantors from the date of the deed. Whether the statute was 20 years or 7 years,

it did not cease to run at the death of the grantors, because the plaintiffs do not hold under a conveyance for value, but are volunteers upon whom the inheritance was cast, and stand in the shoes of the ancestor. Therefore, the Connor act does not apply; and even if it had, the plaintiffs should have instituted the action within three years after disability was removed, whether it was a 20 years statute or the 7 years statute. C. S., 507.

If the deed of 10 February, 1896, was invalid as a deed because of the technical omission of privy examination, it was a valid admission, and "stipulation" that the defendant was in possession claiming a life estate which ripened by 7 years and 20 years possession. It was at least *evidence how he was holding.*

The children had neither color of title to anything until after the death of their father (according to the terms of the deed) nor possession, and the defendant's possession was adverse to the grantors, and upon their death the statute did not cease to run. *Jacobs v. Williams,* 173 N. C., 276. At the death of J. D. Click the defendant had been then more than 6½ years in sole possession, claiming the life estate under the color of title adverse to grantors under whom the plaintiffs claim.

Counsel for the plaintiffs contend that adverse possession for 7 years nor for 20 years has any validity as to a life estate. But in *Staton v. Mullis,* 92 N. C., 627, the Court held: "The deed, at least, constitutes color of title, and, accompanied with continuous adverse occupancy since its execution, during the long interval of time which has followed, is sufficient to perfect *the life estate."*

There is no evidence that the defendant held for or in common with his children. "The father will not be presumed to have entered in behalf of his children where there is no evidence that he professed to do so, and none that they had any title," *Barrett v. Brewer,* 143 N. C., 88; and the very paper under which in this case he entered and held negatives the father's entry or holding being on behalf of the children who were to take only after his death.

It is true the statute, C. S., 430, says: "Such possession so held gives a title in fee to the possessor," but this is not prohibitive of acquiring a lesser estate by color of title and possession. "A life estate may be acquired by adverse possession." 1 A. & E. (2 ed.), 809, and cases cited.

There is no reason why if adverse possession under color can ripen a fee simple, it should not be valid to the extent of a lesser estate when claimed by the party in possession for the prescribed length of time. "Actual, open, visible possession of land is adverse" to the owner. *Patterson v. Mills,* 121 N. C., 258; *Malloy v. Bruden,* 86 N. C., 251.

The point decided in *Council v. Pridgen,* 153 N. C., 444, was that the privy examination of a free trader was requisite, but this was changed by ch. 54, extra session 1913, now C. S., 3351, which dispensed with such

requirement, and so far as that case was based upon the former decisions of the Court which held that a married woman (with certain exceptions) could not contract, that was also changed, prior to the act of 1913, by the Martin act, Laws 1911, ch. 109, now C. S., 2507. It is true that privy examination is still required in a few states in some conveyances by married women, notwithstanding it has been repealed in England, in Virginia, Tennessee, South Carolina, Georgia, and indeed in most all other states. But that requirement has no bearing in this case for the reason already given, that if not complied with the conveyance is color of title, and has been ripened in this case by adverse possession.

It would be difficult to find a more unmeritorious claim than in this case. It is almost as tragic and somewhat similar to the story of King Lear; only instead of a kingdom, the controversy is over a little farm of 110 acres of seemingly poor land, which the children are impatient to get because the old man has not died. Less fortunate than Lear, there is no Cordelia among his children. He might well say to them, "You do take my life when you do take that by which I live." Shakespeare's *Merchant of Venice,* IV, 1.

The only explanation is that the defendant, having married again, these plaintiffs, who have for years been adults and have left the home, are impatient that the children of the second marriage are being raised thereon. They rely upon the technicality that the conveyance to their father in 1896, in lieu of the tenancy by the curtesy, lacked the privy examination of the *feme* grantor, but they overlooked the 7 years possession under color, the 20 years possession under known metes and bounds, and that neither they, nor those under whom they claim, have had seizin within 20 years, which are either of them sufficient to defeat this action. *Moody v. Wike, post,* 509.

The defendant went into possession of the property, in which he was later given a life estate, in 1886, put the buildings thereon, and has held it continuously and notoriously ever since, and adversely to grantors (under whom plaintiffs claim) since February, 1896. By his labor on the premises he has reared and supported these plaintiffs, and now in his old age they attempt to turn him out. The grantors themselves could not have done this after the lapse of seven years adverse possession by defendant, C. S., 428, under the deed of 10 February, 1896, and the plaintiffs, succeeding as their heirs, are in no better condition either as to the one-half interest therein, which they inherited, nor as to the other one-half, for which Mrs. Fleming has quitclaimed to them.

The plaintiffs are not subsequent purchasers for value, but volunteers, and the law applicable is nowhere better stated than in *King v. Mc-Rackan,* 168 N. C., 623, 624, and *Gore v. McPherson,* 161 N. C., 644, both by *Mr. Justice Allen,* and which are conclusive against the plaintiffs in this case. Nor do the plaintiffs claim under a common source

of title, though it had a common origin, for the plaintiffs claim by inheritance from parties against whom the defendant held adversely.

As already stated, there is no conflict in the evidence that the possession by the defendant since 10 February, 1896, up to the beginning of this action, 1 May, 1919, was sole, exclusive, open, and notorious under claim of a life estate under a deed which is color of title, and also adversely under known and visible metes and bounds. If there had been any conflict of evidence the instruction to the jury would have been only the more erroneous. Judgment should have been entered of nonsuit.

There is not a *scintilla* of evidence, nor any evidence from which it can be inferred, that the father was at any time in possession for his children or jointly with them, and "it will never be presumed." *Barrett v. Brewer,* 143 N. C., 88. He entered into possession in 1886 and held for 10 years, taking the rents and profits, and putting the buildings on the land in question; the conveyance in 1896 is defective only in not having the privy examination, and under all our authorities, herein cited, this was color of title. If so, his holding began then as tenant for life, remainder to his children, not in common with them. If, however, that paper be held a nullity as a conveyance, his children took nothing. But it was a contract with himself by which he held adversely to the grantors therein, and his title has ripened by the seven years possession, by the twenty years, and the children, who have never been in possession, are barred by the fact that neither themselves nor those under whom they claim had been in possession, or had seizin, within twenty years before this action began.