M. H. WILLIS AND WIFE v. W. F. ANDERSON, SPEAR OIL COMPANY, R. Q. FLOURNOY, M. G. HAYS AND THE MARINE BANK.

(Filed 29 October, 1924.)

**1. Deeds and Conveyances—Seals—Void Deeds—Equity.**

While a deed to lands executed without the seals affixed to the signature of the makers is void, equity will compel its proper execution when the writing itself is sufficient for the purpose and the consideration has been paid by the grantee.

**2. Same—Equity—Nonresidence—Attachment—Sermons—Service.**

Where nonresident grantors of a void deed to lands are required in equity to make a valid conveyance of lands situated in this State to resident grantees, the lands are not property owned in this State by the grantors, that are subject under our statutes to bring the nonresident grantors in the courts of this State as defendants in an action brought herein.

**3. Same—Fraud—Notice.**

One who has acquired by deed lands from the owner of the full equitable title, as under the facts of this case, cannot be affected, without further evidence of notice of fraud alleged between his vendor and his grantor.

APPEAL by plaintiffs from *Daniels, J.,* at June Term, 1924, of CARTERET.

All the defendants, except the Marine Bank, are nonresidents of this State. In July, 1921, the sheriff of Carteret County, by virtue of warrants of attachment directed to him, levied upon, seized and took into his possession all the right, title and interest of the nonresident defendants in and to a certain lot of land situate in Morehead City, Carteret County, North Carolina, described in certain paper-writings from M. H. Willis and wife to W. F. Anderson, recorded in Book 32, at pages 184 and 416, office of register of deeds of Carteret County, on which is located the building occupied by the Marine Bank.

In their complaint, plaintiffs allege that by means of false and fraudulent representations, set out in the complaint, made during the months of September and October, 1920, of and concerning the value of the capital stock of the Spear Oil Company, the nonresident defendants induced the plaintiffs in consideration of shares of stock in said company of the par value of $12,500, or thereabout, to execute, and that plaintiffs did execute, a paper-writing dated 2 October, 1920, and recorded in Book 32, at p. 184, office of register of deeds of Carteret County, purporting to convey to W. F. Anderson the property described therein for the recited consideration of $15,000; that thereafter by means of the said representations, the said nonresident defendants induced the plain-

tiffs to sign and that plaintiffs did sign a paper-writing dated 10 October, 1920, and recorded in Book 32, at page 416, office of the register of deeds of Carteret County purporting to convey to W. F. Anderson the property described therein; that plaintiffs signed said paper-writing but did not affix their seals thereto.

That thereafter W. F. Anderson and his wife signed a paper-writing dated 11 June, 1921 and recorded in Book 34, at page 342, office of register of deeds of Carteret County, purporting to convey in consideration of $7,000, paid in cash, the property described therein to defendant, the Marine Bank; that said W. F. Anderson and his wife signed the said paper-writing but did not affix their seals thereto.

That the representations set out in the complaint were made by the said nonresident defendants falsely and fraudulently with intent to mislead, deceive and cheat and that they did mislead, deceive and cheat the plaintiffs, causing them to sign the two paper-writings as alleged and that thereby the plaintiffs have been damaged in the sum of $15,000.

That defendant, the Marine Bank, at the time it took from W. F. Anderson and wife the paper-writing signed by them, had full notice and knowledge of the false and fraudulent representations made to the plaintiff by the nonresident defendants, and that plaintiffs were induced thereby to execute and sign the deed and paper-writing as set out in the complaint; that the consideration paid by said defendant to W. F. Anderson for the property described in said paper-writing was notoriously inadequate, and that defendant is not an innocent purchaser for value of the property described in the paper-writing executed by W. F. Anderson and wife to the defendant.

Plaintiffs demand judgment that they recover of the nonresident defendants the sum of $15,000 as damages, that same be adjudged a first lien on the lot of land described in the said paper-writings and that said lot of land be condemned to be sold to pay said debt and costs, and further that the two paper-writings from plaintiffs to defendant, W. F. Anderson, and the paper-writing from W. F. Anderson and wife to the Marine Bank, be adjudged void and the title to the said lot of land be adjudged in the plaintiffs, unencumbered.

The nonresident defendants did not file answer to the complaint or enter appearance either in person or by attorney in this action. Plaintiffs allege that the court acquired jurisdiction of said defendants by attachment of property owned by them in this State.

The Marine Bank in its answer denies that plaintiffs were induced by false and fraudulent representations, as alleged, to execute and sign the paper-writing set out in the complaint; it denies any notice or knowledge on its part of such false and fraudulent representations and alleges that it paid full value for the property conveyed to it by W. F.

Anderson and wife. Said defendant further alleges that plaintiffs are estopped to set up any claim to the lot conveyed to it by W. F. Anderson and wife by their conduct, as set out in the answer. Defendant further denies that the nonresident defendants have any interest whatever in the property upon which the sheriff levied under the warrants of attachment issued to him.

Plaintiffs offered evidence which they contend support the allegations of the complaint. At the conclusion of all the evidence, upon motion of the defendant, the Marine Bank, judgment as of nonsuit was rendered. To this judgment plaintiffs excepted and appealed to the Supreme Court. The only assignment of error is based upon this exception.

*D. L. Ward, Ward & Ward and M. Leslie Davis for plaintiffs.*
*Luther Hamilton, C. R. Wheatley and J. F. Duncan for defendants.*

CONNOR, J. The only assignment of error made by the plaintiffs on this appeal is based upon the exception to the judgment of nonsuit.

There was no personal service of summons on the nonresident defendants or on either of them; neither of said defendants entered appearance or filed answer; plaintiffs contend that the court acquired jurisdiction by attachment of property owned by said nonresident defendants in this State, and by publication of summons. Defendant, the Marine Bank, denies that the nonresident defendants have any right, title or interest in or to the lot of land levied upon by the sheriff, under the warrants of attachment issued in this action.

Notwithstanding the publication of summons, as required by the statute, C. S., 485, the court acquired no jurisdiction of the nonresident defendants, unless property in this State, subject to the process of the court, was brought under its control by attachment. *Everett v. Austin,* 169 N. C., 622; *Walton v. Walton,* 178 N. C., 75; *Bridger v. Mitchell,* 187 N. C., 375.

On 2 October, 1920, plaintiffs by deed duly recorded in Carteret County, conveyed to defendant, W. F. Anderson, his heirs and assigns "a certain tract or parcel of land in Carteret County, State of North Carolina, adjoining the lands of . . . and others, bounded as follows, viz.: One two-story brick building, known as the Marine Bank building, in square or block No. 9, part of the west half of lot No. 12, and part of the last half of lot No. 11, as known in the plan of Morehead City, the same being bounded on the north by Arendell Street, and on the west by J. J. Baker's stores and on the east by R. T. Willis' store."

This deed was recorded on 19 October, 1920. On 20 June, 1921, plaintiffs signed a paper-writing, without affixing their seals thereto, purport-

31—188

ing to convey to W. F. Anderson, his heirs and assigns, "a certain tract or parcel of land in Carteret County, State of North Carolina, adjoining the lands of....... ..and others, and bounded as follows, viz.:

"Part of lots Nos. 11 and 12 in square No. 9, according with the plan of the town of Morehead City, N. C., beginning at a point in south line of Arendell Street, 42 feet from the northeast corner of lot No. 11 in square No. 9 (eastwardly), and running eastwardly with the line of Arendell Street 25 feet; thence southwardly parallel with Eighth Street 90 feet; thence westwardly parallel with Arendell Street 25 feet; and thence northwardly parallel with Eighth Street 90 feet to the beginning, being the tract on which is located a brick building, the first floor of which is occupied by the Marine Bank. This deed is given in lieu of and for the purpose of correcting the description in deed recorded in Book 32, page 184, in the office of the register of deeds for Carteret County, North Carolina."

This paper is not effectual as a deed of conveyance, as it purports to be, for the reason that the signers thereof did not affix their seals thereto. It was offered in evidence by plaintiffs. It bears date 20 October, 1920, but was acknowledged by plaintiffs on 20 June, 1921, and recorded on 24 June, 1921. A comparison of the description in the deed dated 2 October, 1920, with the description contained in this paper, shows that the purpose of the plaintiffs was, as recited in the paper, to describe more accurately and with greater definiteness the lot of land sold and conveyed by plaintiffs to W. F. Anderson. The same lot of land is described in both the deed and this paper, and W. F. Anderson was, from and after the execution of the deed dated 20 October, 1920, the owner in fee of the lot of land in Morehead City on which is located the two-story brick building occupied by Marine Bank, said lot fronting on Arendell Street 25 feet and running parallel with Eighth Street 90 feet. There is no evidence that any of his codefendants, nonresidents of this State, owned during this or at any other time any interest in said lot of land.

In June, 1921, W. F. Anderson and his wife signed a paper-writing, which was duly recorded in Carteret County, on 24 June, 1921, purporting to convey to the Marine Bank, in consideration of $7,000 paid to them in cash, the lot of land described in the deed from plaintiffs, dated 2 October, 1920, and in the paper-writing signed by plaintiffs on 20 June, 1921. The original paper and the record of same were offered in evidence by plaintiffs. No seals appear on either the original or on the record of said paper-writing. An admission is entered in the record that the Marine Bank paid W. F. Anderson $7,000 in cash upon the execution of this paper, on 11 June, 1921.

This paper-writing was not effectual as a deed of conveyance, the grantors having failed to affix their seals thereto. Plaintiffs contend that said paper-writing was void and of no effect for any purpose, and that at the beginning of this action, in July, 1922, W. F. Anderson was the owner of the lot of land, notwithstanding he and his wife had signed the said paper-writing. Plaintiffs contend that, the sheriff having levied upon and seized this lot of land as the property of W. F. Anderson, the court acquired jurisdiction of the said Anderson for the purposes of this action.

The Marine Bank contends that the said paper-writing, although not effectual as a deed of conveyance, is valid as a contract to convey, and that by virtue of the admission that it has paid to Anderson $7,000 in cash for the land, it has an equity in the land which the court in the exercise of its equitable jurisdiction will protect. It therefore contends that at the beginning of this action, in July, 1922, W. F. Anderson had no right, title or interest in said lot, subject to attachment in this action, and that the court therefore had acquired no jurisdiction of Anderson.

This Court has held, in *Strain v. Fitzgerald,* 128 N. C., 396, that "a paper-writing, in form a deed, is *not a deed,* without a *seal";* and *Clark, J.* (afterwards *Chief Justice* of this Court), dissenting from the holding of the Court in regard to the presumption arising from a recital in the deed as recorded, in his opinion, says: "If, in fact, the instrument has neither a seal nor a scroll, or pen flourish in lieu thereof, after the signature of the grantor, it is invalid." A paper-writing without a seal will not pass the legal and equitable title to land. No action in which plaintiff seeks to recover land, founded solely upon a paper-writing not under seal, and no defense based upon such paper-writing alone, can be maintained in a court of law. A court of equity, however, will afford its aid to one who asserts rights under an instrument defective in its execution, and who brings himself within the maxim that "Equity regards as done that which ought to be done." This has been declared to be equity's favorite maxim. 21 C. J., 200. It finds its most important application in the enforcement of contracts for the conveyance of real property. Equity calls to its aid this maxim to protect and enforce rights which the law is unable to enforce or protect, arising from or dependent upon instruments defectively executed. An instrument, in form a deed, which has been defectively executed, may operate as a contract to convey. *Robinson v. Daughtry,* 171 N. C., 200.

In *Vaught v. Williams,* 177 N. C., 78, an executrix, under a power conferred upon her in the will of her testator, sold land to a purchaser, who paid the purchase money to her; the executrix executed deed to the purchaser, which was duly registered. The executrix did not affix her

seal to this deed. The heirs of the testator brought suit to recover the land, alleging that the defendant, who claimed under the purchaser, acquired no title under the deed, which was without seal. This Court, affirming a judgment against the plaintiffs in that case, and quoting, with approval, Story Eq. Jur., 186, says: "So, if an instrument, whether it be a deed or will, is required to be signed and sealed, and it is without seal or signature, equity will relieve." "Whenever a man having power over an estate, whether ownership or not, in discharge of moral or natural obligations, shows an intention to execute such power, the court will operate upon the conscience of the heir (holder of legal title) to make him perfect this intention." *Chapman v. Gibson,* 21 Eng. Rul. Cas., 390. "It may be stated, as a general rule, that mere volunteers will not be assisted, but that aid will be given to purchasers for value, mortgagees, lessees, creditors, and persons who have a meritorious standing."

The evidence in this case shows a purpose and intent on the part of W. F. Anderson to convey the lot of land to defendant Marine Bank; the paper which they signed contains all the formal words and clauses of a deed—recites the consideration and acknowledges the receipt of same in cash, contains a full description of the property, the habendum clause, a full warranty clause, and concludes as follows: "In testimony whereof, the said W. F. Anderson and Libbie A. Anderson have hereunto set their hands and *seals,* the day and year first above written."

In addition to the paper-writing itself, the deposition of W. F. Anderson, offered by plaintiff, is evidence of the intent with which Anderson signed the paper. He testified that he sold the property to the Marine Bank, and considered the sum paid by the bank a fair and reasonable price for the property.

Defendant is not a mere volunteer; it has paid $7,000 cash for the property, the highest offer which the agent of Anderson could secure in June, 1921. Certainly, the Marine Bank has a meritorious standing in a court of equity when its title to and rights in the property are attacked solely on the ground that its grantors failed to affix seals to the paper by which they *intended,* in consideration of the payment of what they admit was a fair and reasonable price, to *convey* the property to the bank. If the grantors, upon demand of the bank, should hesitate to correct the defect in the deed when called upon so to do, a court of equity would be prompt, upon the facts established by this evidence, to decree that they should do now what they ought to have done, and what they manifestly intended to do.

At the date of the attachment W. F. Anderson had nothing more than the bare legal title to this lot. He had no beneficial interest in the land, and certainly stood in no better relation to the land than a

vendor who had received payment, in full or in part, of the purchase price from his vendee, in accordance with the contract of sale, or of a mortgagee who holds the legal title as against the mortgagor.

This Court has held that the interest of a vendor of land who has received a part of the purchase price from his vendee cannot be sold under an execution issued upon a judgment against him. *Tally v. Reid,* 72 N. C., 336; *Mayo v. Staton,* 137 N. C., 670.

This Court has further held, in the language of *Justice Stacy,* that "in respect to the rights of all persons, except the mortgagee, who holds the legal title to the mortgaged premises, it is well settled that the mortgagor is to be considered the owner of the land"; and, further, "that a mortgagee has no interest in the mortgaged premises which can be taken at law under attachment or general execution." *Stevens v. Turlington,* 186 N. C., 191.

"At common law, an attachment, like an execution, would not run against land; but as the lands of a debtor being now as a rule liable to be taken on execution for his debts, it follows by analogy that the real property of a defendant in attachment proceedings is liable to seizure under the process, unless by the terms of the statute it clearly appears that the intention of the Legislature is otherwise." 6 C. J., 201; C. S., 807.

The interest of a mortgagee in land is not of such a nature as to be liable to attachment." 6 C. J., 203, and cases cited to support text.

"In order for realty to be attachable, it is essential that the debtor have some beneficial interest in the land. The bare legal title or instantaneous seisin would be insufficient, at least as against the equitable owners, where the attaching party has or is bound by law to take notice of the paramount outstanding equitable title." 6 C. J., 202.

W. F. Anderson, at date of the levy of the attachment in this action, had a mere naked legal title to the land, the equitable title and estate being in the Marine Bank by virtue of the paper-writing, valid as a contract to convey, and of the admission in the record that the Marine Bank had at that date paid the full purchase price for the land. The court therefore acquired no jurisdiction of W. F. Anderson or of said land by virtue of the attachment.

We are not inadvertent to the allegation in the complaint that W. F. Anderson acquired title to this land from the plaintiffs by false and fraudulent representations, and that the Marine Bank had full notice and knowledge of said representations and was not an innocent owner, for value, of the land. It is not alleged that W. F. Anderson conveyed or contracted to convey the land to the Marine Bank with intent to defraud plaintiffs, or with any other fraudulent intent. The law upon this aspect of the case is clearly stated in 6 C. J., at p. 205.

"Inasmuch as a conveyance of property with intent to defraud one's creditors may be treated as a nullity by them, it follows that property which has thus been conveyed may be attached as the property of the grantor by his creditors, the same as if no conveyance had been made. To sustain his attachment, however, the creditor must show fraud upon the part of the transferee, or that the deed to him was without consideration and wholly void."

The following facts clearly appear from the evidence: Plaintiffs conveyed the land levied upon by the sheriff to Anderson by deed, dated 2 October and recorded 19 October, 1920. Plaintiff, M. H. Willis, received as consideration for such deed certificates for shares of the capital stock of the Spear Oil Company of the par value of $12,500; Anderson, also, in accordance with the understanding, paid off and discharged plaintiff's note for $2,750 held by the Jefferson Standard Life Insurance Company, and secured by a mortgage on the land conveyed. Plaintiff thereafter stated to several persons, including officers of the bank, on several occasions, that he was satisfied with the transaction. No complaint by the plaintiffs was brought to the attention of the bank or of Anderson until some time after Anderson had sold the property to the bank. Plaintiff surrendered possession of the property to Anderson after the execution of his deed, and the Marine Bank, lessee of the plaintiff at date of said deed, thereafter paid rent to Gilliken, agent of Anderson. No demand by the plaintiffs for rent has been made upon the bank since the execution of the deed to Anderson.

When negotiations were begun, in June, 1921, for the sale of the property to the bank by Gilliken, agent for Anderson, the bank suggested that the description of the property in the deed dated 2 October, 1920, should be more definite; and, thereafter, at Anderson's request, plaintiffs freely and voluntarily signed the paper offered in evidence, dated 10 October, 1920, and acknowledged by the plaintiffs on 20 June, 1921; plaintiffs signed this paper with full understanding that the paper was a duplicate of the old one, and was requested only for the purpose of making the description "more full and complete" (testimony of M. H. Willis). This paper-writing, signed by the plaintiffs, was presented to the bank at the time it closed the negotiations for the purchase of the property from Anderson, and paid him $7,000 in cash. This paper was signed and the sale was made to the bank more than eight months after the conveyance by plaintiffs to Anderson. After said conveyance, and as late as May, 1922, M. H. Willis urged the bank to buy from him a lot adjoining the bank lot, saying to officers of the bank, "You people own this property; let me sell this adjoining lot to you."

Anderson first authorized Gilliken, as his agent, to sell the property for $12,000, and agreed to accept $7,000 in cash only after Gilliken had

reported to him that this was the best bid which he had been able to secure for the property.

Anderson and the bank were at arms-length during the negotiations leading up to the sale of the property to the bank. Neither had notice of any contention on the part of plaintiffs that they had more than eight months prior thereto been induced by false and fraudulent representations to convey the property to Anderson. Both knew that plaintiffs had freely and voluntarily, on 20 June, 1921, signed a paper which was in effect a ratification of the conveyance made in October, 1920. There is no allegation or evidence tending to prove that there was a purpose or intent on the part of either Anderson or the bank to defraud plaintiffs by the conveyance of the property to the bank. The lot of land was not subject to attachment in July, 1922, as the property of W. F. Anderson or of any one of the nonresident defendants.

The exception to the judgment of nonsuit is not sustained, and the judgment is

Affirmed.