EUDORA B. GARRISON AND HUSBAND, WILTON M. GARRISON, AND LINA B. ARDREY (WIDOW), PETITIONERS/PLAINTIFFS v. WILLIE BLOUNT BLAKENEY (WIDOW); FRANCES BLAKENEY COKER AND HER HUSBAND, BYRON COKER; MARGARET BLAKENEY BULLOCK AND HER HUSBAND, LEONARD S. BULLOCK; AND JAMES A. BLAKENEY (III) AND HIS WIFE, JULIE MILLER BLAKENEY, RESPONDENTS/DEFENDANTS

No. 7726SC544

(Filed 11 July 1978)

1. Rules of Civil Procedure § 56.5— summary judgment—findings of fact unnecessary

In a hearing upon the parties' motions for summary judgment, the trial court did not err in failing to find facts, even though petitioners filed a written request for findings, since the matter would not properly have been one for summary judgment if it had been necessary for facts to be found.

2. Deeds § 6; Seals § 1— requirement of seal

Though the reason for the use of a seal—the authentication of the grantor—has long since been completely eliminated in N. C., a seal is still required in order that a deed shall have validity as a conveyance of property.

**3. Deeds § 6; Seals § 1— seal—jury question—summary judgment improper**

In a partition proceeding where the petitioners' interest in the land in question depended upon the validity of two deeds which petitioners claimed were invalid, the trial court erred in granting respondents' motion for summary judgment after concluding as a matter of law that one of the deeds was "in all respects good and proper," since the attestation clause in the deed said that the grantor did thereunto "fix my sign and seal" and immediately thereunder appeared the word "Sign"; and the trial court could conclude as a matter of law that the letters "Sign" constituted a seal, but whether grantor placed it there or adopted it as his seal if placed there by someone else were questions for the jury.

**4. Deeds § 1— description of land conveyed—genuine issue of material fact**

In a partition proceeding where the petitioners' interest in the land in question depended upon the validity of two deeds which petitioners claimed were invalid, summary judgment was improperly entered since the description in the deeds was for a "1/2 interest in my farm" in a named township and county, with adjoining landowners listed indicating by placement on the page the sides on which they adjoined, and with the acreage given, and such description was sufficient to admit extrinsic evidence of the identity of the land in question.

**5. Deeds § 8.1— deed supported by consideration—no deed of gift**

In a partition proceeding where the petitioners' interest in the land in question depended upon the validity of two deeds which petitioners claimed were invalid, and which the trial court, upon motion for summary judgment, determined to be "in all respects good and valid," petitioners' contention that one of the deeds was invalid because it was a deed of gift and not recorded within two years of its execution was without merit, since the recited consideration was "Five Dollars and other valuable consideration" and the other valuable consideration included a covenant imposing a personal obligation upon the grantee to provide a home for certain family members.

**6. Deeds § 7.3— deed not recorded—transfer of title not affected**

Where a deed to grantee was not recorded until after grantee had conveyed the property to a third person, grantee's deed to the third person was nevertheless valid since recordation of the deed from grantor to grantee was not necessary to convey title to grantee, and grantee could transfer that title even though the deed was not recorded.

APPEAL by petitioners/plaintiffs from *Walker (Ralph A.), Judge.* Partial judgment entered 15 April 1977, Superior Court, MECKLENBURG County. Heard in Court of Appeals 31 March 1978.

Petitioners, Eudora B. Garrison and Lina B. Ardrey, are daughters of James A. Blakeney, who died in 1928. On 16 May 1975, they filed a petition for partition of lands. They alleged that James A. Blakeney left surviving six children: Bessie, Edmonia, Margaret, Eudora, Lina, and James, Jr.; and that at his death each took an 1/6 undivided interest in his lands. In 1935, Bessie

died intestate and without issue, and her 1/6 undivided interest went to her five siblings. In 1950, Edmonia died intestate and without issue, and her 1/5 interest went to her four surviving siblings. In 1966 Margaret conveyed her 1/4 interest to James, Jr. so that James, Jr. owned an 1/2 undivided interest, Lina owned an 1/4 undivided interest, and Eudora owned an 1/4 undivided interest. James, Jr. died in 1973 leaving a will devising his real property to his wife for life and at her death to such of his children as might then be living and the issue collectively of any of his children who had predeceased her leaving issue surviving, the division to be per stirpes. The respondent Willie Blount Blakeney is the widow of James, Jr., and respondents Frances Blakeney Coker, Margaret Blakeney Bullock, and James A. Blakeney III are all the children of James, Jr., and own an 1/3 remainder interest in an undivided 1/2 interest in the property. The petitioners further alleged that the property is susceptible of an even and equitable partition among the parties, but respondents have refused and rejected efforts at voluntary partition. Petitioners prayed for partition with costs, including attorney fees, to be taxed against respondents.

Respondents answered, by their second defense denied allegations that petitioners each owned an 1/4 undivided interest and respondents, children, owned an 1/2 undivided interest subject to their mother's life estate. They denied that petitioners had any interest and averred that Willie Blount Blakeney owns a life estate in all the property and each of her children owns an 1/3 interest subject only to her life estate.

By their third defense, respondents averred that on or about 13 May 1917 James A. Blakeney and wife conveyed to Alexander Martin an 1/2 undivided interest in the lands, the deed being recorded in the Mecklenburg County Registry, Book 3711 at page 892. They further averred that on or about 13 November 1929, Alexander Martin and wife conveyed the same property to James, Jr., by deed recorded in Book 2722 at page 409, Mecklenburg County Registry. By that deed James, Jr. acquired an 1/2 undivided interest in the property, and his father, at the time of his death, owned only an 1/2 undivided interest, so that the six children inherited an 1/6 interest in an 1/2 undivided interest. By virtue of the death of his sister Bessie in 1935 and the death of his sister Edmonia in 1950, James, Jr. inherited 1/4 of the interest

held by them, and, by virtue of a deed from his sister Margaret, he acquired whatever interest she had.

By their fourth defense, respondents aver that they have acquired title to any interest claimed by petitioners by virtue of their adverse possession. This claim is not before us.

Respondents requested a jury trial on all issues of fact raised by the pleadings. The matter was transferred to the civil issue docket, and both parties moved for summary judgment on the issues raised by the third defense; *i.e.*, the validity of the two deeds and record title ownership of the property described in the petition. The judgment entered after hearing allowed respondents' motion for summary judgment, denied petitioners' motion, and adjudicated that both deeds were valid. Petitioners appeal.

*Hicks and Harris, by Tate K. Sterrett and Eugene C. Hicks III, for petitioner appellants.*

*Grier, Parker, Poe, Thompson, Bernstein, Gage and Preston, by William E. Poe and Irvin W. Hankins III, for respondent appellees.*

MORRIS, Judge.

[1] Petitioners' first two assignments of error are directed to the failure of the court to find facts. Prior to the entry of the judgment, petitioners filed a written request that the court "find the facts specially and state separately its conclusions thereon" under the provisions of N.C. G.S. § 1A-1, Rule 52(a). This rule, insofar as it might be applicable here, provides first that "[i]n all actions *tried upon the facts without a jury* or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment" and that as to decisions of any motion or order ex mero motu findings of fact and conclusions of law are necessary only when requested by a party and as provided by Rule 41(b). Obviously the first section of the Rule has no applicability, since, by its expressed terms, it is concerned with *actions tried upon the facts*. A motion for summary judgment is not an action tried upon the facts since this motion can only lie where there is no necessity for trying the action upon the facts. But petitioners say the

rule requires the court to find facts in deciding a motion if requested so to do by any party. Again, we point out, as we have already done on numerous occasions, if it is necessary for facts to be found, the matter is not properly one for summary judgment. As was said in *General Teamsters, Chauffeurs and Helpers Union v. Blue Cab Co.*, 353 F. 2d 687, 689 (7th Cir. 1965): "The making of additional specific findings and separate conclusions on a motion for summary judgment is ill advised since it would carry an unwarranted implication that a fact question was presented." *See also Klein v. Insurance Co.*, 26 N.C. App. 452, 216 S.E. 2d 479, *aff'd.* 289 N.C. 63, 220 S.E. 2d 595 (1975); *Wall v. Wall*, 24 N.C. App. 725, 212 S.E. 2d 238, *cert. denied* 287 N.C. 264, 214 S.E. 2d 437 (1975); *Markham v. Swails*, 29 N.C. App. 205, 223 S.E. 2d 920, *cert. denied* 290 N.C. 309, 225 S.E. 2d 829, 290 N.C. 551, 226 S.E. 2d 510, 429 U.S. 940 (1976); *Furst v. Loftin*, 29 N.C. App. 248, 224 S.E. 2d 641 (1976). There may be cases in which it would be helpful for the court to set out in its judgment those undisputed facts upon which judgment is based, but this procedure would rarely be helpful or necessary and should be used sparingly. When used, the court should be careful to note that it is stating the undisputed facts. They should not be referred to as findings.

Here the court stated in its judgment that it had "determined that there are no contested material issues of fact pertaining to the motions, the only question being the validity and legal effect of the two 'deeds' previously referred to herein as Exhibits A and B, and whether either party is entitled to judgment as a matter of law". The court then stated "The Court makes the following findings and conclusions:" There follows the court's conclusion that the two deeds are valid and effective and its determination of the interests of the parties in the real estate. These are obviously not findings of fact, although erroneously stated to be. Petitioners' first two assignments of error are overruled.

In their own motion for partial summary judgment and their response to respondents' motion for summary judgment the petitioners alleged that the two deeds were invalid.

As to the deed from James Blakeney and wife to Alexander Martin, dated 13 February 1917, the petitioners alleged that it was recorded 57 years after its date and is invalid and ineffectual to convey any interest in real estate for the following reasons: (1)

The description is insufficient, (2) There is no seal affixed after the grantors' names nor otherwise appearing on said paper-writing as being adopted by the grantors, (3) The paper writing was never meant to be a deed, was never meant to be recorded, the signatures were never notarized during the life of either grantor, and its recordation after the death of James, Jr. was done solely to alter the percent of ownership of petitioners, and (4) The purported deed is "off the chain of title" and ineffectual to serve as record notice of a conveyance.

As to the deed from Alexander Martin and wife to James, Jr., dated 13 November 1929, and recorded some 36 years thereafter, the petitioners' allegations of invalidity are as follows: (1) At the time of the conveyance neither grantor owned record title to the property and, therefore, could not convey the property, (2) The description is insufficient, (3) The purported conveyance was a gift and not recorded within two years of its making, and (4) the purported conveyance is "off the chain of title" and cannot give record notice of a conveyance.

All parties agree that the primary issue for decision by this Court is whether the two deeds are valid conveyances.

We first discuss the 1917 document, which we shall refer to as the "Blakeney deed". Petitioners first urge that the court erred in granting respondents' motion for summary judgment because, at the very least, the question of whether the grantor intended to adopt a marking as his seal must be submitted to a jury. But, the petitioners urge, that should not be necessary because, as a matter of law, the deed is not under seal and summary judgment should have been entered for petitioners.

In North Carolina there can be no doubt but that a seal is essential to the validity of a deed. *Williams v. Board of Education*, 284 N.C. 588, 201 S.E. 2d 889 (1974); *Williams v. Turner*, 208 N.C. 202, 179 S.E. 806 (1935); *Strain v. Fitzgerald*, 128 N.C. 396, 38 S.E. 929 (1901), *petition for rehearing allowed*, 130 N.C. 600, 41 S.E. 872 (1902); *Patterson v. Galliher*, 122 N.C. 511, 29 S.E. 773 (1898); *Harrell v. Butler*, 92 N.C. 20 (1885); *Pickens v. Rymer*, 90 N.C. 282 (1884); *Yarborough v. Monday*, 14 N.C. 420 (1832); *Ingram v. Hall*, 2 N.C. 193 (1795); Webster, Real Estate Law in North Carolina § 170 (1971). Originally, the purpose of the seal was to identify the grantor and authenticate the instrument as the grant-

or's. The seal, when first used "exhibited the emblem which its owner had affixed to his person, when covered in the field with his coat of mail, and which being portrayed upon some conspicuous part of his dress, served to designate his person", *Ingram v. Hall*, 2 N.C. at 198, and was used by the nobility and gentry only. Very few people could write even among the nobility and gentry, and the common people had no use for seals, because, for the most part, they were not allowed to have contracts, and the need for identity as a grantor simply did not exist. As trade began to flourish, and the need for contracts became more prevalent, even among those less than nobility, the necessity for authenticating contracts became urgent. Those entering into contracts adopted the only mode of authentication then known, the seal. They used any symbol they chose. Frequently the *pares* of the area did not know the seals and, therefore, could not determine authenticity solely by inspection of the seal. It often became necessary for these jurors to call upon people who knew the seal used by the party to say whether it was his seal. The law, rather than invalidate the transaction, left it to the jury to make the determination.

> "In this country the people have departed still further from the true use of seals, by not making any impression at all, scratching something like a seal upon the margin of the paper, and making that pass for a seal. To the first of these abuses the law has conformed, and will now deem the sealing to be sufficient if found by the jury to be the seal of the party. . . ." *Ingram v. Hall*, 2 N.C. at 200.

[2] Though the reason for the use of a seal—the authentication of the grantor—has long since been completely eliminated in this State, we still require a seal in order that a deed shall have validity as a conveyance of property. An instrument, in form a deed, without a seal may operate as a simple contract to convey, *Willis v. Anderson*, 188 N.C. 479, 124 S.E. 834 (1924), but it is not a deed without a seal. While many states have abolished the requirement of a seal for validity, North Carolina still requires it. 23 Am. Jur. 2d, Deeds, § 27 at 95 (1965). Despite the fact that a seal, or scrawl adopted as a seal, can add nothing to the authentication of a seal as being the act of the grantor, we are bound by the common law requirement, absent an act of the legislature dispensing with the requirement. We find very interesting the comment

of Professor Webster in Real Estate Law in North Carolina, where he said:

> "In other words, any mark *may* be a seal *if proved to be a seal.* But if additional proof is necessary to show that a mark is a seal, i.e., that it is authentic, of what use is a seal?" Webster, Real Estate Law in North Carolina § 170 at 198 and 199 n. 184.

The original instrument was before the court in this case, and it contains no seal affixed after the signature of J. A. Blakeney. Immediately above his signature, the conclusion of the deed is as follows: "In token whereof I do hereto this thirteenth day of February 1917 fix my sign and seal." Under that appears the word "Sign" and opposite that word and on the same line, if there were a line, is "J. A. Blakeney". Under the signature appear a series of dots. Similar dots appear under the signature of witnesses on the left side of the page. It appears that someone had attempted to make lines to indicate signatory lines.

Respondents argue that the word "Seal" is written in "what would appear to be the grantor's own handwriting". There is no evidence whatsoever in the record which would indicate the truth or falsity of that statement. They also argue that the word begins with a capital letter, that it appears immediately over the grantor's signature, and that the sentence is in the emphatic form of the present tense. In *Patterson v. Galliher*, supra, the attestation clause was "Given under my hand and seal this blank day of blank, Anno Domini 18. . . .

. . . . . . . . . . . . . . . . . . . .
                    Sheriff"

which was the form of deed prescribed by Session Laws of 1895, ch. 119, sec. 65, for Sheriffs' deeds. The Court said the attestation clause reads as though a seal were to be affixed; that although the General Assembly could, if it so chose, dispense with the requirement of a seal, there were no express words in the statute which would change the general law requiring a seal, and the Court was not willing to say that such an important change could be made by implication. The deed was held to be invalid and void. *See also Strain v. Fitzgerald, supra*; and *Harrell v. Butler, supra*, where the attestation clause contained similar language, but the

validity of the deed was dependent upon whether the word "Seal" appearing on the left side of the page adjacent the signature of a witness was intended by the grantor, whose signature by mark appeared on the right side of the page, to be his seal. We cannot help but agree with the plausibility of respondents' argument, but the law is otherwise.

[3]  The attestation clause in the "Blakeney deed" says that the grantor does hereto "fix my sign and seal". Immediately thereunder appears the word "Sign". It would seem that this word could certainly encompass "Sign and Seal", since any mark or scrawl may be a seal if proved to be a seal. In *Yarborough v. Monday, supra*, the trial court had ruled an instrument to be the deed of defendant where the evidence was that plaintiff's brother had written the contract; that at the bottom he made a scrawl and wrote the word "Seal" inside; that immediately thereafter each party directed him to sign his name to the contract; that he did so and put plaintiff's name opposite the scrawl but did not make another scrawl or anything purporting to be a seal opposite defendant's name. On appeal, the Court held that the court erred in deciding questions of fact; *i.e.*, whether defendant intended to adopt the seal and did adopt it. But the Court further said: "Whether the scrawl affixed was in this State a seal certainly was a question of law to be determined by the court; but whether defendant placed it there or adopted it as his seal if placed there by the plaintiff or some other person were questions for the jury." *See also Williams v. Turner*, supra; *Pickens v. Rymer, supra*. Here the court, in the judgment entered on the motion for summary judgment, found that the deed "is in all respects good and proper". If, in so finding, the court concluded as a matter of law that the letters "Sign" constituted a seal, we would agree, but whether grantor placed it there or adopted it as his seal if placed there by someone else are questions for the jury.

[4]  Petitioners assign as an additional reason for the court's error in allowing respondents' motion for summary judgment, their position that the description contained in the deed is insufficient and the deed, therefore, void. The Blakeney deed describes the property to be conveyed as:

"One-half (1/2) interest in my farm which lies in Providence Township, Mecklenburg County, North Carolina, and adjoins the lands of

Robinson

Bryant                                                    Kill

Kerr

and consists of two hundred-fifteen acres more or less (215), what is known as Dunn place is included in this transaction." (The words designating the adjoining landowners are arranged as in the original instrument.)

Petitioners rely on *Holloman v. Davis*, 238 N.C. 386, 78 S.E. 2d 143 (1953). There the description in question was:

" 'Lying and being in Harrellsville Township, Hertford County, and known as a part of the Evans tract of land, the same being the one-half undivided interest of Vernon R. Holloman in said tract of land, adjoining the lands of J. R. Odom being on the north; on the east by the lands of K. R. Evans; on the west by the lands of J. P. Mitchell, containing 80 acres, in the whole tract, more or less, together with all appurtenances thereto belonging.' " 238 N.C. at 387, 78 S.E. 2d at 144.

The question of the sufficiency of the description was raised in a partitioning proceeding wherein the land sought to be partitioned was described in two separate tracts. One of the respondents claimed an one-half interest in the land sought to be partitioned. Her ownership of that interest was dependent upon the validity of the deed containing the questioned description, because she alleged the land conveyed by the deed under which she claimed was the land described in the petition for partition. Evidence was presented which showed that the lands sought to be partitioned were described in the deed to the former owner and in the petition as two separate and distinct tracts which were more than a quarter of a mile apart and which were separated by a public road. Between these two tracts were lands belonging to others. Under these circumstances the Court affirmed the judgment of the trial court because the description was "insufficient to identify and make certain the land to be conveyed, nor is it sufficient to be aided by parol testimony to fit it to the two separate tracts

of land described in the petition." The respondent simply was not able, after attempting to aid the description by parol to fit it to the lands in which she claimed an interest. Here the description is for an "1/2 interest in *my* farm . . ." (Emphasis supplied) in a named township and county, with adjoining landowners listed indicating by placement on the page the sides on which they adjoined, and with the acreage given. We think this is clearly sufficient to admit extrinsic evidence of its identity. For cases in which similar descriptions have been held sufficient to be aided by parol evidence, *see Carson v. Ray*, 52 N.C. 609 (1860); *Farmer v. Batts*, 83 N.C. 387 (1880); *Janney v. Robbins*, 141 N.C. 400, 53 S.E. 863 (1906); *Hinton v. Roach*, 95 N.C. 106 (1886); *Perry v. Scott*, 109 N.C. 374, 14 S.E. 294 (1891). Nor do we think *Holloman v. Davis, supra,* in any respect overrules these cases or changes the application of the rule of law. *See also* G.S. 8-39 and *Overton v. Boyce*, 289 N.C. 291, 221 S.E. 2d 347 (1976). Respondents are entitled to introduce such evidence as they may be advised in an attempt to fit the land intended to be conveyed by the Blakeney deed to the land sought to be partitioned. For this additional reason, summary judgment was not proper. It disposed of a genuine issue of material fact; *i.e.,* the identity of the land described in the Blakeney deed.

The second deed involved is the deed of Alexander Martin et ux to James A. Blakeney, Jr., dated 13 November 1929, and recorded in the Mecklenburg County Registry on 8 February 1966. This deed we shall refer to as the "Martin deed". As to this deed, the court, in the judgment entered for respondents, found to be "in all respects good and valid". It purports to convey an one-half undivided interest in and to a certain tract of land in Providence Township, Mecklenburg County described as follows: "Two hundred, fifteen acres more or less/known as the Dunn place and bounded by lands now or formerly owned by L. H. Robinson, S. H. Kill, G. B. Bryant and Sam Kerr." What we said in our discussion of the Blakeney deed with respect to the description is equally applicable here and makes summary judgment improper.

[5] Petitioners also assert that the deed is invalid because it is a deed of gift and not recorded within two years of its execution. It is certainly undisputed that the deed was not recorded for some

36 years after its execution. If there was *no* consideration, it must be adjudged to be a deed of gift and, therefore, void.

The recited consideration is "Five Dollars and other valuable consideration". The deed is a form deed, and the printed word "Seal" in parentheses appears after each signature. When this is true, it is presumed that the grantors intended to adopt the seal, *McGowan v. Beach*, 242 N.C. 73, 86 S.E. 2d 763 (1955), and cases there cited. Petitioners do not seriously contend otherwise. An instrument executed under seal imports consideration. *Honey Properties, Inc. v. Gastonia*, 252 N.C. 567, 114 S.E. 2d 344 (1960). Perhaps a more accurate statement would be that the seal gives rise to a presumption of the presence of consideration and "estops a covenantor from denying a consideration except for fraud". *Crotts v. Thomas*, 226 N.C. 385, 387, 38 S.E. 2d 158, 159 (1946). There is nothing in the pleadings suggesting fraud.

Additionally the deed recites "other valuable consideration", and provides:

"This conveyance is made subject to the following limitations *which are hereby accepted by the party of the second part*:

(1) No mortgage shall be given on the premises herein conveyed so long as the same shall remain the property of the party of the second part.

(2) The premises herein conveyed shall be used as a home for any of the said James A. Blakeney's sisters who may not be able to support themselves, and who may wish to avail themselves of this privilege; *but this clause shall not obligate the Grantee herein to extend this privilege to any other relatives except sisters*." (Emphasis ours.)

Petitioners contend that this cannot serve as consideration because the first limitation constitutes a restraint on alienation and the sisters already had a right to use the premises as cotenants in common with the grantee. True, the sisters had an undivided interest in the property and a right to their share of rents and profits. The limitation, however, required the grantee, who accepted the limitation, to make the premises available to those of his sisters who could not support themselves as a home. This obviously required grantee to do more than recognize their undivided interest in the property. That this is true is indicated

by the specific provision that the grantee should not be obligated to furnish a home for any other relatives. We do not discuss whether the first limitation is a restraint on alienation, or whether the second limitation can be interpreted as a condition precedent or a condition subsequent. Suffice it to say that it is, in our opinion, a covenant imposing a personal obligation on the grantee and is a valuable consideration for the transfer of the property. *Minor v. Minor,* 232 N.C. 669, 62 S.E. 2d 60 (1950). Nor do we discuss whether this recital, contractual in nature, can be varied by parol evidence. Certainly the testimony of Mrs. Blakeney (by deposition) to the effect that the grantee told her his uncle "had given him half of the farm" and that "he never bought an acre in his life" would necessarily be predicated on hearsay and, therefore, incompetent. *Hinson v. Morgan* and *Hinson v. Baumrind,* 225 N.C. 740, 36 S.E. 2d 266 (1945).

[6]  Finally, petitioners argue that the Martin deed is invalid and the court should have so found because the grantors did not have record title at the time of the conveyance. This is quite obviously true. The Blakeney deed, dated 13 February 1917, to Martin had not been recorded at the date of the Martin deed to Blakeney, 13 November 1929. Nevertheless, recordation was not necessary to convey title to Martin. If the deed was a valid deed, the grantee therein, Martin, acquired good title which he could transfer, even though the deed was not recorded. "[A] previously executed deed, though not registered, will prevail over all persons who are not purchasers for value or lien creditors. . . ." Webster, Real Estate Law in North Carolina, § 333 at 413 and cases there cited. It is not the purpose of the recording statutes to make a deed effective to transfer title by recordation. Their purpose is to protect prospective purchasers of land and those who desire to encumber land. Of course, a grantee who fails to record a deed conveying land to him assumes the risk of a subsequent grantee of the same land acquiring superior rights to his by recordation. None of these problems exist here.

Because the validity of both deeds can only be determined after questions of fact have been decided by a jury with respect to both deeds, the trial court erred in granting respondents' motion for summary judgment. For the same reason, petitioners' motion was properly denied.

Reversed and remanded.

Judges MARTIN and ARNOLD concur.