**S.M. HORMAN as General Partner for Horman Construction Co., a Utah partnership and S.M. Horman, Jr., Plaintiffs and Appellants,**

v.

**S. Spence CLARK, as General Partner for Valley Shopping Center Associates, a Utah partnership, Defendants and Respondents.**

No. 860068–CA.

Court of Appeals of Utah.

Oct. 27, 1987.

Raymond A. Hintze, Salt Lake City, for plaintiffs and appellants.

James S. Jardine, Salt Lake City, for defendants and respondents.

OPINION

Before ORME, GARFF and DAVIDSON, JJ.

GARFF, Judge:

Plaintiffs/appellants S.M. Horman (Horman) and S.M. Horman, Jr. (Horman, Jr.) brought suit against defendant/respondent S. Spence Clark to recover damages for an alleged breach of contract. The lower court ruled that the Hormans had no cause of action, dismissing the suit. We affirm.

Horman owned a vacant tract of land north of and contiguous to the Valley Shopping Center, owned by Clark, in Murray, Utah. Clark had purchased the shopping center from Horman in 1970. Horman and Clark entered into an agreement which provided, in part, that Horman or his assigns were to have parking privileges in any public parking stalls in the parking lot at the rear of the Valley Shopping Center.

Even though this agreement was properly signed and acknowledged by September

1975, neither party immediately recorded it. Clark never recorded it, and Horman found it in his files nearly two years later, determined that it had not been recorded, and recorded it on January 12, 1978.

Meanwhile, on March 15, 1977, Clark conveyed his interest in the Valley Shopping Center to W. Meeks Wirthlin and his wife. The warranty deed conveying the center to the Wirthlins indicated that the property was subject to "easements, convenants, restrictions, rights of way, encroachments and reservations appearing of record or enforceable in law or equity." Clark did not inform the Wirthlins of Horman's parking rights on the property. The Wirthlins' warranty deed was recorded on March 15, 1977, nearly one year before Horman recorded his parking agreement. Because Horman's agreement had not yet been recorded, no mention was made of it in the Wirthlins' title report, and they were unaware of the agreement's existence. Subsequently, the Wirthlins sold their interest in the Valley Shopping Center to Arnold Development, which then sold it to G.G. Finlayson and Janet F. Griffin, who owned it at the time of trial.

When Horman finally recorded his agreement, he made no inquiry into the ownership status of the Valley Shopping Center and did not know of the subsequent sales. In 1980, he conveyed the property contiguous to the Valley Shopping Center to his son, Horman Jr., who commenced developing it for business purposes.

In July 1980, Horman Jr. obtained a building permit from Murray City and began constructing a twenty-unit commercial building. Finlayson, the new owner of the Valley Shopping Center, somehow learned of Horman Jr.'s apparent parking rights on his property, and requested an adjustment in the shopping center purchase price from Arnold Development.

Subsequently, on November 3, 1980, Finlayson's attorney notified Horman that any parking easement was ineffective against the Wirthlins and any subsequent purchasers because of the late recording of the agreement between Horman and Clark. On December 30, 1980, Horman asserted that the parking "easement" was valid in a letter to Finlayson's attorney.

In the following months, Murray City issued a stop order against Horman Jr.'s construction because he did not have sufficient parking space for his building to comply with Murray City ordinances. The Hormans, limited to 57% occupancy of the new building by Murray City, attempted to negotiate with Finlayson for use of parking spaces in the shopping center parking lot. Because these negotiations were unsuccessful, the Hormans filed this lawsuit on March 16, 1981, seeking lost profits and other damages resulting from the reduced occupancy of the building.

The trial court found that Clark had no duty to record the agreement,[1] and, therefore, the Hormans had no cause of action. We agree.

The Hormans argue that Clark had an implied contractual duty to disclose the parking agreement to the subsequent purchasers, nothwithstanding Utah Code Ann. § 57-3-3 (1986). That statute provides:

**Effect of failure to record.** Every conveyance of real estate hereafter made, which shall not be recorded as provided in this title, shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any portion thereof, where his own conveyance shall be first duly recorded.

The Hormans acknowledge that, under this statute, they have no cause of action against the Wirthlins and the subsequent purchasers because the Wirthlins recorded their interest in the property prior to the Hormans. However, the Hormans argue that Clark is liable for breach of contract

---

1. The trial court stated in the memorandum decision that "[i]n real estate transactions, it is a grantee's rights that are given protection by the recording statutes and that protection can only be obtained by the recording. I think the responsibility for doing so falls upon the grantee and such has long been the practice in real estate transactions. The law neither requires nor is it customary that a warranty deed conveying real property specifically list all of the valid, existing encumbrances of record. That is why title companies exist and that is why buyers and sellers look to title reports to reveal such encumbrances of record."

because (1) he, as vendor, failed to record the agreement, and (2) he neglected to inform the subsequent purchasers of the Hormans' parking interest in the property. They rely upon Utah Code Ann. § 57–1–6 (1986), which states, in part, that

> [e]very conveyance of real estate, and every instrument of writing setting forth an agreement to convey any real estate or whereby any real estate may be affected, to operate as notice to third persons shall be proved or acknowledged and certified in the manner prescribed by this title and recorded in the office of the recorder of the county in which such real estate is situated, but shall be valid and binding between the parties thereto without such proofs, acknowledgment, certification or record, and as to all other persons who have had actual notice.

The agreement did not expressly require Clark to record the agreement, nor did it impose upon him any affirmative duty to specifically disclose the parking rights to third parties. The Hormans' success on appeal, then, depends on whether Clark had an implied obligation under the agreement to safeguard the Hormans' interests. We hold that he did not.

The recording statute's purpose is not to make the transfer of property effective as between the parties, but to protect the purchaser's interest against the asserted interest of any third parties, *Huntington City v. C.W. Peterson*, 30 Utah 2d 408, 518 P.2d 1246, 1248 (1974); *see also Gregerson v. Jensen*, 669 P.2d 396, 399 (Utah 1983), and to inform third parties of the existence of pre-existing encumbrances on the property. "The only purpose of a recording statute, whether it relates to the recording of deeds or to the assignment of judgments, is to provide a method by which a transferee can protect himself from intervening claimants." *First Nat'l. Bank of Oregon v. Jack Mathis Gen. Contractor, Inc.*, 274 Or. 315, 546 P.2d 754, 759 (1976). Thus, the purpose of the recording statute is to protect the grantee's rights, not those of the grantor, and, if the grantee fails to

record, he "assumes the risk of a subsequent grantee of the same land acquiring superior rights to his by recordation." *Garrison v. Blakeney*, 37 N.C.App. 73, 246 S.E.2d 144, 151 (1978), *cert. den.*, 295 N.C. 646, 248 S.E.2d 251 (1978).

That the Hormans, the grantees, failed to avail themselves of the statutory protection against the very harm that they suffered should not give them the right to hold Clark, the grantor, responsible for their failure. Further, because the recording statute also exists for the purpose of giving third parties notice of prior claims, Clark, similarly, owes no obligation to Horman to provide such information to third parties.[2] We, therefore, hold that the grantor of property has no implied obligation to protect the grantee's rights by recording the grantee's interest in the property or by informing third parties of the existence of the interest. Thus, the only obligation Clark had under the agreement was to provide parking privileges while he had title to the property. Consequently, we affirm the trial court's judgment against the Hormans.

DAVIDSON and ORME, JJ., concur.

---

**2.** Clark did nothing to hide the parking rights from his buyer. From all appearances, his conduct was consistent with the accepted norms of the real estate market: He assumed Horman, as

a prudent transferee, would record his interests; he assumed Wirthlin, as a prudent buyer, would obtain a preliminary title report which would recite the existence of the parking agreement.